IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KALIMA HAYWARD, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-1820 |
| | : | |
| PARKMOBILE, LLC, | : | |
|     Defendant. | : | |

## MEMORANDUM

**BEETLESTONE, C.J.**                                                                                                                          **OCTOBER 15, 2025**

      Plaintiff Kalima Hayward, proceeding *pro se* and *in forma pauperis*, commenced this civil action by filing a Complaint (ECF No. 1) against Defendant ParkMobile, LLC ("ParkMobile"), asserting claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Currently before the Court are ParkMobile's Motion to Dismiss (ECF No. 13), Hayward's Response thereto (ECF No. 15), Defendant's Reply thereon (ECF No. 17), and Plaintiff's Sur-Reply in Opposition (ECF No. 18). For the following reasons, the Court will grant the Motion to Dismiss.

## I.    FACTUAL ALLEGATIONS[1]

      Hayward alleges that she "was a registered user of ParkMobile's parking payment services," and that she "created a ParkMobile account and provided personally identifiable information ('PII'), including [her] email address, phone number, and license plate number."

---

[1] The facts set forth in this Memorandum are taken from Hayward's Complaint (ECF No. 1). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Additionally, the Court includes facts reflected in publicly available court records, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

(Compl. at 3.) She states that ParkMobile "suffered a major data breach" in March 2021, compromising her PII along with that of "over 21 million consumers." (*Id.*) Hayward alleges that "ParkMobile failed to notify [her] of this breach," and that she "only learned of the breach in December 2024 when [she] conducted an independent cybersecurity scan." (*Id.*) She states that she has suffered numerous injuries to her credit and data security. (*Id.* at 3-4.) She asserts that ParkMobile's actions violated the UTPCPL and seeks damages.[2]

## II.    MOTION TO DISMISS

ParkMobile's Motion to Dismiss asserts that the "March 2021 cyberattack perpetuated by third-party criminal actors against ParkMobile ('the Data Incident')" was the subject of a class-action lawsuit in the United States District Court for the Northern District of Georgia. (*See* ECF No. 13-1 at 1 (citing *Baker v. ParkMobile, LLC* No. 21-2182 (N.D. Ga.) (the "Baker Action")).) ParkMobile explains:

---

[2] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. Hayward and ParkMobile are citizens of different states. (*See* Compl. at 3.) Although Hayward appears to seek exactly $75,000 in compensatory damages under the UTPCPL (*see id.* at 4), which would not satisfy the jurisdictional requirement that the amount in controversy *exceed* $75,000, she also requests treble damages under the UTPCPL, so the requirements of § 1332 are met. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (noting that as "the party invoking diversity jurisdiction," a plaintiff must demonstrate "that the amount in controversy exceeds $75,000"); *Banks v. Allstate Fire & Cas. Ins. Co.*, 454 F. Supp. 3d 428, 434 (M.D. Pa. 2020) ("Treble damages are available under the UTPCPL, and are properly considered in computing the amount in controversy for purposes of diversity jurisdiction." (first citing *Nexus Real Estate, LLC v. Erickson*, 174 A.3d 1, 4 (Pa. Super. Ct. 2017); then citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 401 (3d Cir. 2004))); *see also Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 255 (6th Cir. 2011) ("[T]he amount in controversy in this case is $75,000—exactly one penny short of the jurisdictional minimum of the federal courts." (citing 28 U.S.C. § 1332)); *accord Wilson v. Hudson*, 404 F. App'x 934, 935 (5th Cir. 2010) (*per curiam*); *cf. Jacobs v. Geisinger Wyoming Med. Ctr.*, 21-3362, 2022 WL 1564193, at *1 (3d Cir. May 18, 2022) (*per curiam*) (affirming dismissal of complaint that asserted damages "totaling no more than $75,000" (citing, *inter alia*, *Auto-Owners*, 835 F.3d at 395-96)); *Brookins v. Figuccio*, No. 22-731, 2023 WL 2579043, at *1 n.1 (2d Cir. Mar. 21, 2023) (summary order) (noting that "an amount in controversy of exactly $75,000 is insufficient to invoke diversity jurisdiction," but finding jurisdiction where a plaintiff also sought punitive damages (citations omitted)).

> The Baker Action alleged that, in March 2021, ParkMobile was the victim of the Data Incident, which resulted in the unauthorized disclosure of customers' PII. The plaintiffs alleged that ParkMobile's inadequate data security measures allowed the Data Incident to occur, thereby exposing personal and sensitive user data. Plaintiffs further claimed that they suffered harm by way of responding and attempting to mitigate the consequences of the Data Incident, while some plaintiffs also alleged to have suffered from fraudulent activity directly and proximately linked to the Data Incident.

(*Id.* at 2 (cleaned up).) ParkMobile asserts that a settlement in the Baker Action was granted preliminary approval on November 5, 2024; that the Settlement Class included "[a]ll individuals that received or were otherwise sent notice that their Personal Information was potentially compromised due to ParkMobile's Data Security Incident"; and that the district court approved the form of notice to the Settlement Class members. (*Id.* at 2-3 (quoting ECF No. 13-4 at 3 (reproducing Preliminary Approval Order, Dkt. 278 in the Baker Action)).) The district court then granted final approval of the settlement on May 6, 2025, in an order that deemed all claims stemming from the Data Incident released, unless a class member had timely opted out of the settlement. (*See id.* at 3 (citing ECF No. 13-5 (reproducing Order of Final Approval, Dkt. 300 in the Baker Action)).) ParkMobile asserts that Hayward was not among those who opted out, so her claims are precluded by the settlement. (*See id.* at 3-4.) Hayward has filed a response and sur-reply to ParkMobile's Motion to Dismiss. (*See generally* ECF Nos. 15, 18.) Hayward argues her claims are not precluded by the settlement, primarily because she did not receive adequate notice. (*See* ECF No. 15 at 1-2.)

### III. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

3

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court may also take judicial notice of prior court proceedings. *See In re Ellerbe*, No. 21-3003, 2022 WL 444261, at *1 (3d Cir. Feb. 14, 2022) (*per curiam*) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988)); *see also Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 (3d Cir. 2017), *as amended* (Sept. 14, 2017) ("With respect to affirmative defenses, such as res judicata, dismissal is proper if application of the defense is apparent on the face of the complaint; we may also look beyond the complaint to public records, including judicial proceedings." (citation omitted)); *Gimenez v. Morgan Stanley DW, Inc.*, 202 F. App'x 583, 584 (3d Cir. 2006) (*per curiam*) (observing that "*[r]es judicata* is a proper basis for dismissal under 28 U.S.C. § 1915(e)(2)(B)").

To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . .

4

claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that *pro se* filings are construed liberally). Additionally, since Hayward is proceeding *in forma pauperis*, the Court may independently screen her Amended Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

## IV. DISCUSSION

ParkMobile argues that Hayward's claims are barred by the settlement in the Baker Action under the doctrine of claim preclusion. "Claim preclusion—which some courts and commentators also call *res judicata*—protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (internal quotations omitted). Claim preclusion prevents parties from raising issues that could have been raised and decided in a prior case regardless of whether those issues were litigated. *Id.* In other words, "[t]he prior judgment's preclusive effect . . . extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Id.* at 231-32. "Claim preclusion similarly reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same." *Id.* at 232; *see*

*also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the *essential similarity* of the underlying events giving rise to the various legal claims." (quoting *United States v. Athlone Indus.*, 746 F.2d 977, 983-84 (3d Cir. 1984))).

Three elements are required for claim preclusion to apply: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Marmon Coal Co. v. Dir., Office Workers' Comp. Programs.*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks omitted). As to the first element, "[j]udicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion." *Conceicao v. Nat'l Water Main Cleaning Co.*, 650 F. App'x 134, 135 (3d Cir. 2016) (*per curiam*) (citing *Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995)). However, "[i]t is well settled that a court adjudicating a class action cannot predetermine the *res judicata* effects of its own judgment; that can only be determined in a subsequent suit." *McAdams v. Robinson*, 26 F.4th 149, 161 (4th Cir. 2022) (quoting *Pelt v. Utah*, 539 F.3d 1271, 1285 (10th Cir. 2008)).

### A. Final Judgment on the Merits and Cause of Action

The Court concludes that the first and third elements of claim preclusion are met here. The order in the Baker Action certifying the class under Federal Rule of Civil Procedure 23(b)(3) and granting final approval of the settlement under Rule 23(e) (*see* ECF No. 13-5) constitutes a final judgment on the merits. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008); *Conceicao*, 650 F. App'x at 135. And, despite Hayward's arguments to the contrary (*see, e.g.*, ECF No. 15 at 1-4), her claims are "based on the same cause of action" as the Baker Action. *Marmon*, 726 F.3d at 394. The Baker Action included claims under the UTPCPL on behalf of a Pennsylvania

6

subclass.  (*See* ECF No. 13-3 at 74-78 (reproducing the operative complaint in the Baker Action).)   Hayward's allegation that ParkMobile never notified her directly of the Data Incident, only for her to discover it through "an independent cybersecurity scan" in December 2024 (Compl. at 3) mirror the allegations by the named plaintiffs in the Baker Action who learned of the Data Incident from third-party credit and cybersecurity monitoring services (*see* ECF No. 13-3 at 39-46).  The plaintiffs in the Baker Action asserted that the Data Incident caused them injuries such as compromised PayPal accounts, fraudulent charges on debit and credit cards, duplicate accounts opened in their names on social media services, and increases in spam email traffic and risks of identity theft from their PII being traded or sold on the dark web, with associated damages arising from the need to change passwords or to purchase cybersecurity and credit protection.[3]  (*See id.*)  Hayward similarly alleges that, "[a]s a result of the breach, [she] became the target of phishing emails and fraudulent attacks . . . attempting to compromise [her] PayPal account," and "a target for cybercriminals [due to her] personal information potentially being sold over the dark web," and that she has "suffered financial harm such as charges on [her] bank accounts . . . [,] an increased risk of identity theft[, and] time and money [spent] securing [her] accounts, changing credentials and purchasing identity theft protection services."  (Compl. at 3-4.)  Thus, the Baker Action and Hayward's claims are based on the same cause of action.  *See Davis v. Wells Fargo*, 824 F.3d 333, 342 (3d Cir. 2016) ("*[R]es judicata* generally is thought

---

[3] The Court takes judicial notice of the allegations in the Baker Action complaint for the purpose of comparison to the allegations in Hayward's Complaint, not for their truth.  *See In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (concluding that judicial notice can be taken of certain facts such as that a document was filed, a position taken, an admission or allegation made "as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority" (quoting *In re Indian Palms Assocs., Ltd.,* 61 F.3d 197, 205 (3d Cir.1995))).

to turn on the essential similarity of the underlying events giving rise to the various legal claims. In short, the focus is on facts rather than legal theories." (citations omitted)).

### B. Due Process and Notice

Hayward also contests the second element of claim preclusion, asserting that she is not in privity with the plaintiffs in the Baker Action because (a) she never received actual notice of the class, the settlement, or her ability to opt out; and (b) the notice procedures were constitutionally infirm and deprived her of due process. (*See* ECF No. 18 at 1-2.) Claims against individuals who were not parties to a prior lawsuit may be precluded in certain circumstances, including when there is a substantive legal relationship between the party and nonparty. *See Taylor*, 553 U.S. at 893-94. "Representative suits with preclusive effect on nonparties include properly conducted class actions." *Id.* at 894.

A court seeking to certify a class action "must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23. Additionally, "[a]fter initially approving [a class action] settlement, but before giving final approval, Federal Rule of Civil Procedure 23(e)(1) requires a district court to 'direct notice in a reasonable manner to all class members who would be bound by the proposal.' Although the Rule provides broad discretion to district courts with respect to the notice's form and content, it must satisfy the requirements of due process." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) (citing *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir.1985)); *see also Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 99 (3d Cir. 2013) ("To be bound by a class settlement agreement under the principles of *res judicata*, . . . [an] absent class member must have been afforded certain due process protections." (citing *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005)). "In a class where opt out rights are

afforded, these protections are adequate representation by the class representatives, notice of the class proceedings, and the opportunity to be heard and participate in the class proceedings." *In re Diet Drugs,* 431 F.3d at 145 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)). "There must be a process by which an individual class member or group of class members can challenge whether these due process protections were afforded to them," including "a collateral attack on an already-certified class." *Id.* at 145-46 (first citing *Grimes v. Vitalink Commc'ns Corp.,* 17 F.3d 1553, 1558 (3d Cir. 1994); then citing *In re Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 767 (3d Cir.1989)).

Hayward argues that she "never received class notice by mail or email and [she] never saw it on the ParkMobile app or website and therefore had no meaningful chance to opt out before the deadline." (ECF No. 15 at 2.) To the extent that she argues that she had to receive actual notice of the Baker Action and the settlement in order to be bound by its terms as a matter of due process, that argument fails. "Due process does not require that every class member receive actual notice, and, therefore, failure to receive notice is not fatal to the plan." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 474 (E.D. Pa. 2000); *see also DeJulius v. New England Health Care Empls. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("Due process . . . does not require actual notice to each party intended to be bound by the adjudication of a representative action."); *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56-57 (1st Cir. 2004) ("After such appropriate notice is given [under Rule 23], if the absent class members fail to opt out of the class action, such members will be bound by the court's actions, including settlement and judgment, even though those individuals never actually receive notice."); *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("[T]he due process clause does not amount to a guarantee of notice to a class member.").

Hayward also argues that the notice procedures of the Baker Action and settlement were constitutionally deficient. Hayward's argument rests on the "key element," as she describes it, that: "ParkMobile relied exclusively on automated email notices. No mailed letters, no in-application notifications, no publication on their website, nothing to ensure that the millions of affected customers were actually reached." (ECF No. 18 at 2.) Her arguments are contradicted by the publicly available record of the Baker Action.[4]

In its order granting preliminary approval to the class certification and the settlement, the district court in the Baker Action found "that the proposed form, content, method of giving Notice to the Settlement Class as described in the Notice program and the Settlement Agreement and its exhibits" satisfied Rule 23 and due process. (ECF No. 13-4 at 6.) The Notice program approved by the district court in the Baker Action included "Direct Notice to Settlement Class Members by email to the email addresses Defendant collected from Settlement Class Members," "a dedicated Settlement Website that will inform Class Members of the terms of this Agreement, their rights, relevant dates and deadlines, and related information," "a toll-free help line to provide Settlement Class Members with information about the settlement," and "in-app notice of the claims administration process to its users on the ParkMobile App." Settlement Agreement

---

[4] ParkMobile's preclusion defense obviously relies on the records of the Baker Action, including the findings of fact and conclusions of law made by the United States District Court for the Northern District of Georgia. "Facts of the type contained in judicial case records and opinions are particularly appropriate for judicial notice." *LG. Philips LCD Co., Ltd. v. Tatung Co.*, No. 04-343, 2005 WL 8170100, at *22 (D. Del. Aug. 16, 2005) (taking judicial notice of "findings of facts and conclusions of law made by [another court] on the basis that the opinion is a matter of public record that is available and verifiable in the public records of the United States District Court for the Eastern District of Virginia, as well as by computer through the Westlaw and other legal research databases" (citing, *inter alia*, *In re Indian Palms*, 61 F.3d at 205; *Furnari v. Warden, Allenwood FCI*, 218 F. 3d 250, 255 (3d. Cir. 2000))), *report and recommendation adopted sub nom. LG. Philips LCD Co., Ltd v. Tatung Co.*, No. 04-343, 2006 WL 8452351 (D. Del. Sept. 29, 2006).

and Release, Baker Action, N.D. Ga. No. 21-2182 (Nov. 1, 2024), Dkt. 277-2 at 21-23.  In its order certifying the class and granting final approval to the settlement, the district court found that "the Notice to the Settlement Class ordered by the Court has been disseminated as ordered, according to the declaration of Steven Weisbrot filed with the Court on February 27, 2025." (ECF No. 13-5 at 3.)  That declaration affirmed that the designated noticing agent sent the approved notice "via email to the 19,502,605 Settlement Class Members who had a valid email addresses"; engaged in a "media campaign . . . consist[ing] of Programmatic Display Advertising utilizing internet banner ads and a paid search campaign via Google"; maintained a "case-specific website dedicated to this settlement, www.parkmobilesettlement.com," as well as a toll-free hotline; and that ParkMobile itself "disseminated notice via its ParkMobile App and on its company website."  Declaration of Steven Weisbrot, Baker Action, N.D. Ga. No. 21-2182 (Feb. 27, 2025), Dkt. 287-3 at 5-9.

    Because Hayward's allegation that ParkMobile "relied exclusively on automated email notices" is belied by the public records of the Baker Action, the Court need not accept it as true for the purposes of adjudicating the Motion to Dismiss.  *See Shahid v. Possenti*, No. 22-1015, 2022 WL 1664363, at *6 (E.D. Pa. May 25, 2022) (noting that "[t]he district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed" and finding plaintiff's factual allegations "belied by public records" (quoting 5C Fed. Prac. & Proc. Civ. § 1363 (3d ed.))), *aff'd*, No. 22-2117, 2022 WL 17076038 (3d Cir. Nov. 18, 2022). The district court in the Baker Action exercised its discretion under Rule 23 to craft reasonable notice procedures and specifically found that the parties complied with those procedures before approving the final settlement.  Hayward's inaccurate description of those procedures is not

sufficient to support a claim to relief, so her due process claim fails.

## V.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 13) will be granted, and the Complaint will be dismissed with prejudice for failure to state a claim, pursuant to Rule 12(b)(6). An appropriate Order will be entered separately.  *See* Fed. R. Civ. P. 58(a).

                        **BY THE COURT:**

                        **S/ WENDY BEETLESTONE**

                        **WENDY BEETLESTONE, C.J.**